Eryn Karpinski Hoerster, OSB #106126
E-Mail: eryn.hoerster@foster.com
Kelly Mennemeier (*Pro Hac Vice* Forthcoming)
E-Mail: kelly.mennemeier@foster.com
Yeli Zhou (*Pro Hac Vice* Forthcoming)
E-Mail: yeli.zhou@foster.com
FOSTER GARVEY PC
121 SW Morrison Street, 11th Floor
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PRECISION CONVERSIONS, LLC, an Oregon company, and 321 PRECISION CONVERSIONS, LLC, an Oregon company,<br><br>    Plaintiff,<br><br>    v.<br><br>MAMMOTH FREIGHTERS, LLC, a Delaware company, WILLIAM J. WAGNER, an individual, and WAGNER AERONAUTICAL, INC., a California corporation,<br><br>    Defendants. | Case No. 3:25-cv-01927-AR<br><br>**DEFENDANTS WILLIAM J. WAGNER AND WAGNER AERONAUTICAL, INC.'S MOTION TO DISMISS (FED. R. CIV. P. 12(B)(6))**<br><br>Oral Argument Set for June 3, 2026, 2pm Courtroom 9B<br><br>Magistrate Judge Jeff Armistead |

FG: 110154596.6

**TABLE OF CONTENTS**

LR 7-1 CERTIFICATE OF COMPLIANCE ................................................................. 1

MOTION........................................................................................................................ 1

MEMORANDUM OF LAW ......................................................................................... 1

   I.     INTRODUCTION ............................................................................... 1

   II.    BACKGROUND FACTS ..................................................................... 3

      A.    Passenger-to-Freighter Conversion.......................................... 3

      B.    The Parties ................................................................................ 4

         1.    The Wagner Defendants ................................................ 4

         2.    Plaintiffs Precision Conversions and 321 Precision Conversions .................... 4

         3.    Defendant Mammoth Freighters, LLC ........................... 5

      C.    The 2001 Development Agreement Between Precision Solutions and the Wagner Defendants ............................................................................. 5

   III.   THE FAC'S CONCLUSORY ALLEGATIONS AGAINST THE WAGNER DEFENDANTS ........................................................................................ 7

   IV.   LEGAL STANDARD........................................................................... 8

   V.    ARGUMENT....................................................................................... 9

      A.    Plaintiffs Fail to Adequately Plead a Claim for Breach of Contract (Count V) ..... 9

         1.    Wagner's Alleged Failure To Return the Data Does Not Breach the Development Agreement. ................................. 9

         2.    Precision Does Not Allege Wagner Breached the Development Agreement by Disclosing the Data. ............................. 10

         3.    Precision's Assertions that Wagner Breached the Development Agreement by Disclosing "Know-How" Fail. ............................. 12

      B.    Plaintiffs' Claim for Conversion (Count IV) Fails. ............................. 13

FG: 110154596.6

1.      Plaintiffs' Conversion Claim Fails Because the FAC is Insufficiently Conclusory and Relies Primarily on Information and Belief............................ 13

2.      Plaintiffs Fail to Adequately Allege the Elements of a Conversion Claim. ... 15

3.      Plaintiffs' Claim for Conversion is Preempted by the Oregon Uniform Trade Secrets Act. ...................................................................................................... 17

C.      Plaintiffs Fail to Plausibly Plead Trade Secret Misappropriation Under Oregon and Federal Law (Count I & II) ............................................................................. 18

1.      By the express terms of the Development Agreement, this is not a trade secrets case.......................................................................................................... 18

2.      The FAC Fails to Adequately Allege the Existence of Protectable Trade Secrets ............................................................................................................... 19

3.      The FAC Does Not Plead Facts That Plausibly Allege Misappropriation by the Wagner Defendants.................................................................................... 22

a.      The FAC Fails to Allege Misappropriation Because "Improper Retention" is not a Cognizable Theory under the DTSA or OUTSA ......................... 24

b.      Precision Fails to Plausibly Allege Improper Disclosure or Use.............. 26

CONCLUSION.................................................................................................................... 29

FG: 110154596.6

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7EDU Impact Academy Inc. v. You*,
  760 F.Supp.3d 981 (N.D. Cal. 2024) ...............................................................................24, 25

*AcryMed, Inc. v. ConvaTec*,
  317 F. Supp. 2d 1204 (D. Or. 2004) ........................................................................................17

*Alt. Legal Sols., Inc. v. Ferman Mgmt. Servs., Corp.*,
  No. CV-07-880-ST, 2009 WL 10733692 (D. Or. May 5, 2009) .............................................26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................11, 12, 13, 14, 19

*AssuredPartners of Or., LLC v. Reese*,
  Case No. 6:22-cv-00673-MC, 2022 WL 18024957 (D. Or. Dec. 30, 2022) .....................22, 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955 (2007)................................................................................8, 14

*Commercial Fire Prot., LLC v. Pigg*,
  No. 3:24-CV-00922-AN, 2025 WL 593574 (D. Or. Feb. 21, 2025) ...............17, 21, 22, 23, 27

*De Vol v. Citizens' Bank*,
  113 Or. 595, 233 P. 1008 (1925) .............................................................................................10

*ESHA Rsch., LLC v. RLH Assets, LLC*,
  No. 3:25-CV-00880-AB, 2025 WL 2697107 (D. Or. Sept. 22, 2025) ...............................19, 20

*Fiber Sys. Int'l, Inc. v. Gonzalez*,
  No. 4:04-cv-348, 2005 WL 8167081 (E.D. Tex. Feb. 9, 2005)................................................16

*Giostar Therapy, LLC v. Bioscience Americas LLC*,
  No. CV-18-02788-PHX-SRB, 2019 WL 7841723 (D. Ariz. Apr. 22, 2019) ..........................24

*Hurst v. Hill*,
  96 Or. 311, 188 P. 973 (Or. 1920) ..........................................................................................10

*IDX Sys. Corp. v. Epic Sys. Corp.*,
  165 F. Supp. 2d 812, 819 (W.D. Wis. 2001) ...........................................................................20

FG: 110154596.6

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ...................................................................................20, 22

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ...........................................................................................20

*Kante v. Nike, Inc.*,
    No. 07-cv-1407-HU, 2008 WL 5246090 (D. Or. Dec. 16, 2008), *aff'd*, 364 F.
    App'x 388 (9th Cir. 2010) ................................................................................................18

*Kimera Labs Inc. v. Jayashankar*,
    No. 21-cv-2137, 2022 WL 11965058 (S.D. Cal. Oct. 20, 2022)...................................12, 29

*Lynn v. Sheet Metal Workers' Int'l Ass'n*,
    804 F.2d 1472 (9th Cir.1986) ............................................................................................8

*LyricFind, Inc. v. Musixmatch, S.p.A.*,
    798 F. Supp. 3d 1040 (N.D. Cal. 2025) ............................................................................11

*In re Martin*,
    970 P.2d 638 (Or. 1998) ............................................................................................15, 16

*Nat'l Specialty Pharmacy, LLC v. Padhye*,
    734 F. Supp. 3d 922 (N.D. Cal. 2024) ..............................................................................16

*Navigation Holdings, LLC v. Molavi*,
    445 F.Supp.3d 69 (N.D. Cal. 2020) ..................................................................................23

*NextWave Marine Sys., Inc. v. M/V Nelida*,
    488 F. Supp. 3d 1004 (D. Or. 2020) .................................................................................15

*Opal Labs Inc., v. Sprinklr, Inc.*,
    No. 3:18-cv-1192-HZ, 2021 WL 3713042 (D. Or. Aug. 19, 2021) ...........................17, 26, 28

*Perimeter Sols. L.P. v. Fortress N. Am., L.L.C.*,
    No. 2:24-cv-1276, 2025 WL 553288 (E.D. Cal. Feb. 19, 2025) ...........................................26

*In re Pickett*,
    No. 19-ap-3004-TMB, 2019 WL 3943666 (Bankr. D. Or. Aug. 20, 2019)............................15

*PIW TSG, LLC v. Kerr Contractors, Inc.*,
    Case No. 3:25-cv-00591-AB, 2026 WL 45053 (D. Or. Jan 7, 2026) ...............9, 10, 11, 14, 17

*Profade Apparel, LLC v. Road Runner Sports, Inc.*,
    No. 18-cv-1254, 2020 WL 5230490 (S.D. Cal. Sept. 2, 2020)..............................................16

WAGNER DEFENDANTS' MOTION TO DISMISS (FED. R. CIV. P. 12(B)(6))

Page iv

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
    149 F.4th 1081 (9th Cir. 2025) ..............................................................................21

*Seal Source, Inc. v. Calderon*,
    No. 3:09-cv-875-HU, 2011 WL 5041275, at *11-12 (D. Or. Sept. 29, 2011),
    *report and recommendation adopted*, No. 3:09-cv-875-HU, 2011 WL
    5057079 (D. Or. Oct. 24, 2011) .............................................................................16

*Select Timber Prods. LLC v. Resch*,
    No. 3:17-cv-541-HZ, 2017 WL 3709066 (D. Or. Aug. 27, 2017) ..........................17

*Shita v. Taylor*,
    No. 3:25-CV-00051-AN, 2025 WL 507306 (D. Or. Feb. 14, 2025) ................19, 22

*Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D.
    Cal. Feb. 16, 2017)...............................................................................10, 26, 27

*Talk Radio Network Enters. v. Cumulus Media Inc.*,
    271 F. Supp. 3d 1195 (D. Or. 2017) ................................................................12, 15

*Thomas v. Thomas*,
    No. 1:14-cv-131, 2015 WL 1467207 (D. Idaho Mar. 30, 2015).............................15

**Statutes**

18 U.S.C. § 1836(b) ............................................................................................................7

18 U.S.C. § 1839(5)(A)–(B) .......................................................................................22, 24

18 U.S.C. § 1839(6)(A)...............................................................................................24, 25

Defend Trade Secrets Act .......................................................................................19, 22, 24

Oregon Uniform Trade Secrets Act .......................................................16, 17, 19, 22, 24

ORS 646.461...............................................................................................................7, 22, 24

ORS 646.473(1) .................................................................................................................17

**Other Authorities**

Fed. R. Civ. P. 8...................................................................................................3, 11, 12, 22

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 9, 12

FG: 110154596.6

**LR 7-1 CERTIFICATE OF COMPLIANCE**

Pursuant to LR 7.1, undersigned counsel for Defendants William J. Wagner and Wagner Aeronautical, Inc. hereby certifies that she conferred with Plaintiffs' counsel by videoconference, but the parties could not resolve the issues presented by this motion.

**MOTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendants William J. Wagner and Wagner Aeronautical, Inc. (the "Wagner Defendants") join in Defendant Mammoth Freighters, LLC's ("Mammoth") Motion to Dismiss the First Amended Complaint in its entirety (ECF No. 39) to the extent Mammoth's motion applies to claims against both Mammoth and the Wagner Defendants.  Further, the Wagner Defendants separately move to dismiss with prejudice all of the claims asserted against them in Plaintiffs Precision Conversions, LLC and 321 Precision Conversions, LLC's ("Plaintiffs" or "Precision") First Amended Complaint for failure to state a claim.

**MEMORANDUM OF LAW**

## I.     INTRODUCTION[1]

Precision's First Amended Complaint ("FAC") attempts to expand and re-write the terms of a 25-year-old Assignment, License and Development Agreement (the "Development Agreement") between Precision and the Wagner Defendants to prevent defendant Mammoth – a company that Mr. Wagner is a minority shareholder in – from developing a completely different conversion project, for a different aircraft, decades later. The unambiguous terms of the

---

[1] The Wagner Defendants adopt and join in each and every argument made by Mammoth in support of its Motion to Dismiss the First Amended Complaint (ECF Nos. 39, 63).

WAGNER DEFENDANTS' MOTION TO DISMISS (FED. R. CIV. P. 12(B)(6))

Page 1 of 29

FG: 110154596.6

Development Agreement, however, reveal that it does not mean what Plaintiffs want it to mean, and that Plaintiffs' allegations are meritless.

Mr. Wagner is a leader in his field and brought the engineering "know-how" to Precision necessary for it to obtain regulatory approval for its original aircraft conversion project, the Boeing 757. As can be gleaned from the terms of the Development Agreement attached to the First Amended Complaint, "Know-How" is the valuable technical skill, information, processes and methods that Mr. Wagner brings with him and further develops in the course of every specific conversion project he is involved in. "Data," on the other hand, consists of measurements, test results, and ultimately, a "Finite Element Model" – a matrix of information showing the engineering details of a particular aircraft. By the terms of the Development Agreement, "Data" – including the Finite Element Model – is not trade secret material or even proprietary. It is therefore implausible that such Data – unique only to the 757 conversion, and not proprietary under the terms of the Development Agreement in any event – can be successfully used by a competitor to develop a conversion program for a completely different style of aircraft.

On the other hand, Mr. Wagner retains the right to the valuable Wagner Know-How he brought with him to Precision, as well as a non-exclusive license to the Precision Know-How developed while working alongside Precision twenty-five years ago on the 757, including a right to sublicense proprietary information unique to the 757 to others. By the express terms of the Development Agreement, the rights that Mr. Wagner retained ownership or a license to consist of all of the trade secrets and proprietary information associated with the 757 conversion that he developed with Precision.

The 757 "Data" that Plaintiffs claim has been misappropriated and wrongfully disclosed

FG: 110154596.6

by the Wagner Defendants to Mammoth <u>is not trade secret material</u> at all and for that reason alone, Plaintiffs' claims fail to state a claim for relief for misappropriation of trade secrets. To the extent that Plaintiffs' claims for breach of contract and conversion do not fail for the same reason based on the terms of the Development Agreement, they too must be dismissed because Plaintiffs fail to meet the pleading requirements of Fed. R. Civ. P. 8, relying instead on conclusory allegations and unreasonable inferences.

## II.    BACKGROUND FACTS

### A.    Passenger-to-Freighter Conversion

P2F conversion is the process by which out-of-service passenger airplanes are converted into cargo planes. Converted passenger airplanes may operate as a freighter for decades, extending the operational lifespan of potentially obsolete aircraft. FAC ¶ 14. P2F conversion is a complex and highly technical engineering process, requiring regulatory approval in the form of a Supplemental Type Certificate ("STC") issued by the FAA. The STC allows its holder to alter aircraft consistent with approved design changes. FAC ¶ 15–18. To complete each step of the STC process, an applicant must "present detailed plans, designs, and models reflecting what the company will physically do to the plane; design, manufacture and test many thousands of plane parts for the conversion; and pass a series of ground and flight tests." *Id.,* ¶ 16. The details can vary significantly depending on the specific model of aircraft: the wide-body Boeing 777 is "substantially larger" than the narrow-body Boeing 757, therefore the conversion process for Boeing 777 likely is more complex than for the Boeing 757. *Id.* ¶ 62.

///

///

WAGNER DEFENDANTS' MOTION TO DISMISS (FED. R. CIV. P. 12(B)(6))
Page 3 of 29

FG: 110154596.6

### B.     The Parties

#### 1.     The Wagner Defendants

Defendant William Wagner is an aerospace engineer who has led the engineering of P2F conversion projects for decades on behalf of several different entities, including but not limited to both Precision Conversions (with respect to a Boeing 757 conversion project that received its first STC in or about 2005) and Mammoth (with respect to an in-progress Boeing 777 conversion project).  FAC ¶¶ 59-65.

Mr. Wagner has operated his own company, defendant Wagner Aeronautical, Inc., for over 25 years, which employs teams of other engineers to assist with the P2F conversion process for customers, among other services. *See* FAC ¶ 24 & Ex. 1, p. 1. Mr. Wagner was a founding minority owner and corporate officer of both Plaintiff Precision Conversions and Defendant Mammoth. *See* FAC ¶¶ 24, 59.

#### 2.     Plaintiffs Precision Conversions and 321 Precision Conversions

Plaintiff Precision Conversions, LLC – originally named Erickson Cargo Conversions – was founded in 2001, with Jack Erickson's Erickson Ventures LTD owning 99.935% and defendant William Wagner owning 0.065% of their new entity. FAC ¶¶ 3, 24. Mr. Wagner was initially the Vice President of Engineering of Precision Conversions and had general supervision, direction and control of its engineering projects. *Id.* ¶ 24. 321 Precision Conversions, LLC was formed in 2013.  *Id.* ¶ 4. Both Precision Conversions and 321 Precision Conversions (together, "Precision") are part of the Erickson Group, which provides a wide range of aircraft-related products and services. *Id.* ¶ 5.

In or about 2001, Precision Conversions, in collaboration with the Wagner Defendants and

FG: 110154596.6

others, began to pursue an STC for the P2F conversion of the Boeing 757 aircraft. *Id.* ¶¶ 23-24. The STC for the 757 was obtained by Precision Conversions in or about 2006. *See id.* ¶ 19. 321 Precision Conversions also pursued an STC for the Airbus A321, which it obtained in 2021.

### 3.    Defendant Mammoth Freighters, LLC

Mammoth Freighters was founded in 2020 by Mr. Wagner and Bill Tarpley and, like Precision, is in the business of converting aging passenger airliners into freighters.  *Id.* ¶¶ 6, 59. Mammoth is currently developing a P2F conversion for the wide-body Boeing 777 aircraft, but it has not yet obtained an STC. Because the 777 is substantially larger than either of the prior Boeing or Airbus projects developed by any of the parties, it is more expensive and labor intensive.  *Id.* ¶ 62.  In 2025, Precision assisted Mammoth by "performing consulting services." *Id.* ¶ 73.

### C.    The 2001 Development Agreement Between Precision Solutions and the Wagner Defendants

The Wagner Defendants and Precision, along with their corporate affiliates, are parties to an Assignment, License and Development Agreement dated September 1, 2001. *See* FAC Ex. 1 ("Dev. Agrm."). The Development Agreement provides for the rights and obligations of the parties with respect to work performed in connection with the 757 STC.

The Development Agreement first includes an assignment of rights to intellectual property related to the 757 STC and conversion project. *See* Dev. Agrm. § 1(a).[2] Specifically, the

---

[2] Section 1(a) of the Development Agreement provides definitions for each of "Data," "Precision Know-How," "Wagner Know-How," and "Know-How" generally, as follows:

> **"Data"** means all tools, documentation, and other work product developed in the course of, necessary for the obtainment of, or necessary in the operation under, the 757 STC or the Conversion. "Data" includes, but is not limited to, the Finite Element Model and all supporting data, all loads analyses for whatever source derived, and all information submitted to the FAA in, with or in support of the

FG: 110154596.6

Development Agreement defines the various categories of intellectual property assigned and licensed to the parties.  Importantly, the Development Agreement draws a clear distinction between Data and Know-How. "Know-How" consists of the valuable methods, processes, concepts, ideas, trade secrets, and other proprietary information. "Data," on the other hand, is expressly not trade secret material: it is the work product created using the Know-How brought to and developed by engineers including Mr. Wagner when designing a P2F conversion. All trade secrets – along with all "other proprietary rights" including but not limited to patents, patent applications, and copyrights – are "Know-How."

Pursuant to the Development Agreement, the Wagner Defendants have ownership or a license to all Know-How, whether specific to the 757 (Precision Know-How) or not (Wagner Know-How), and therefore have rights in all trade secrets and other proprietary information. Only the 757 P2F conversion "Data" – which, again, is not trade secret material – is reserved for Precision's exclusive use and is unique to the 757 STC Conversion.  *See* Dev. Agmt. § 1(a).

---

application for the 757 STC.

**"Precision Know-How"** means all intangible methods, processes, improvements, concepts, ideas, and information developed by or for Wagner in the course of, necessary for the obtainment of, or necessary in the operation under the 757 STC or the Conversion unique to the 757 STC or the Conversion.

**"Wagner Know-How"** means all intangible methods, processes, improvements, concepts, ideas, and information necessary for the obtainment of, or necessary in the operation under, the 757 STC or the Conversion that are not unique to the 757 STC or the Conversion.

**"Know-How"** includes all patents, patent applications, copyrights, trade secrets or other proprietary rights.  "Know-How" does not include Data.

Dev. Agrm. § 1(a) (emphasis added).

The Development Agreement also contains an obligation imposed on the Wagner Defendants to transfer to Precision the "Data" in a form reasonably acceptable and readily useful to Precision (*id.* § 1(b)) upon their reasonable request; a 5-year non-compete imposed on Mr. Wagner with respect to services relating to the conversion of Boeing 757 aircraft, or solicitation of Precision personnel for purposes related to 757 P2F conversion, which expired by 2011 (§ 2); and confidentiality obligations imposed on both Precision and the Wagner Defendants with respect to each other's proprietary information obtained in the course of the 757 P2F conversion project (§ 3).

## III.    THE FAC'S CONCLUSORY ALLEGATIONS AGAINST THE WAGNER DEFENDANTS

The FAC alleges claims against the Wagner Defendants for Misappropriation of Trade Secrets under 18 U.S.C. § 1836(b) (Count I) and ORS 646.461 *et seq.* (Count II); Conversion (Count IV); and Breach of Contract (Count V). Specifically, Plaintiff alleges that certain documentary material, including the Finite Element Model ("FEM") for Precision's 757 P2F conversion and three other documents allegedly created during that conversion process, are in Mammoth's possession, and that Mammoth is using such information to pursue an STC for its 777 P2F conversion. FAC ¶¶ 69-81. Precision alleges that this causes it harm because the use of its Data allows Mammoth to "avoid the costly and time-consuming detours that it would have otherwise encountered if it had to navigate this process without Precision's Data," FAC ¶ 83, and that "Plaintiffs could secure tens of millions of dollars in royalty payments for a non-exclusive license" of this information. *Id.* ¶ 85.

As to the Wagner Defendants, however, the FAC alleges only "upon information and belief" that Mammoth "obtained the FEM from Mr. Wagner and/or Wagner Aeronautical" and

FG: 110154596.6

that "Mammoth induced Mr. Wagner and Wagner Aeronautical to breach their duties to maintain the secrecy of the FEM."  FAC ¶ 71; *see id.* ¶ 89 ("On information and belief and as supported by the factual allegations herein, Mammoth, Mr. Wagner, and Wagner Aeronautical agreed and conspired with one another to unlawfully disclose and use Precision's Data."). In addition to the conclusory allegations about disclosure of Precision's Data to Mammoth, the FAC relies on nothing more than a speculative inference that the Wagner Defendants *must* have disclosed certain Precision documents to Mammoth, based solely on the facts that either the documents pre-dated Mr. Wagner's separation from Precision (*id.* ¶ 75) or because they bear Mr. Wagner's signature as a Precision employee (*id.* ¶ 78).

Finally, the FAC alleges that the Wagner Defendants are in breach of the Development Agreement because (1) Mr. Wagner allegedly failed to "return documents" related to Precision's 757 P2F conversion after Precision's founder asked him in 2023 to transfer the Data to Precision (*id.* ¶ 81), that (2) Mr. Wagner allegedly failed to maintain certain Precision Know-How as a trade secret of Precision by disclosing it to Mammoth (an allegation that is itself pleaded in a conclusory manner) (*id.* ¶ 135), and that (3) Mr. Wagner allegedly shared 757 P2F conversion Data, including the FEM, with Mammoth (*id.* ¶ 71).

## IV.     LEGAL STANDARD

A pleading must give fair notice and show the plaintiff is entitled to relief. *Lynn v. Sheet Metal Workers' Int'l Ass'n,* 804 F.2d 1472, 1478 (9th Cir.1986) (citing Fed. R. Civ. P. 8), *dismissal denied,* 487 U.S. 1215 (1988), *aff'd,* 488 U.S. 347 (1989). A formulaic recitation of a cause of action's elements is not enough; a complaint must include sufficient factual allegations to raise a right to relief above the speculative level, and with more than just labels and conclusions. *Bell Atl.*

*Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65 (2007). Where a plaintiff's complaint lacks a cognizable legal theory or contains insufficient facts to support a cognizable legal theory, the complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

## V.       ARGUMENT

### A.       Plaintiffs Fail to Adequately Plead a Claim for Breach of Contract (Count V)

Plaintiffs' Breach of Contract claim should be dismissed. "[T]o state a claim for breach of contract, a plaintiff must ... allege the existence of a contract, its relevant terms, and a breach by defendant that resulted in damage to plaintiff." *PIW TSG, LLC v. Kerr Contractors, Inc.,* Case No. 3:25-cv-00591-AB, 2026 WL 45053, *8 (D. Or. Jan 7, 2026) (quoting and citing *Huskey v. Oregon Dep't of Corr.,* 373 Or. 270, 275, 564 P.3d 142 (Or. 2025)).

Precision alleges three instances of breach by the Wagner Defendants: (1) the Wagner Defendants supposed failure to transfer the Data to Precision "[u]pon request by Precision at any reasonable time," FAC ¶¶ 131-132; (2) Wagner's alleged disclosure of Data, FAC ¶¶133-134; and (3) Wagner's disclosure of "Know-How" to Mammoth, FAC ¶¶135-136.  Those allegations fail

### 1.       Wagner's Alleged Failure To Return the Data Does Not Breach the Development Agreement.

Precision maintains the Wagner Defendants breached the Development Agreement by failing to return Precision Data after Erickson's request—presumably, in December 2023, although the FAC does not say—that they do so. FAC ¶¶81, 131-132. But the Wagner Defendants neither breached the Agreement's terms nor does Precision allege damages from their alleged failure to return the Data.

Under the Development Agreement, Wagner was required to "transfer to Precision all Data at the same time as Wagner submits the final Data to the FAA." Dev. Agmt. § 1(b). Precision does

FG: 110154596.6

not plead Wagner breached that provision or failed to provide the Data when submitting the Data to the FAA.

Instead, Precision alleges Wagner breached a separate provision stating: "Upon request by Precision *at any reasonable time*, Wagner will transfer all Data in its most current state, to Precision." Dev. Agmt. § 1(b) (emphasis added). Precision made its request, however, no earlier than December 2023—over 20 years after the parties executed the Development Agreement and 17 years after Precision alleges the parties stopped collaborating on the 757. *See* FAC ¶¶25, 75, 81. A request for transfer of the Data *decades after* the parties stopped collaborating with respect to the Data is not a request at a "reasonable time." *See Hurst v. Hill,* 96 Or. 311, 323, 188 P. 973, 977 (Or. 1920) ("a year is, as a matter of law, an unreasonable time for the buyer to delay making a demand"); *De Vol v. Citizens' Bank,* 113 Or. 595, 602, 233 P. 1008, 1011 (1925) ("As a general rule it is a question of fact for a jury whether a contract has been performed within a reasonable length of time, but when the facts are undisputed, as in the instant case, it then becomes a question of law for the court to decide.").

Regardless, Precision does not allege facts showing the Wagner Defendants' supposed failure to transfer the data in December 2023 "resulted in damage to" Precision. *PIW TSG, LLC,* 2026 WL 45053 at *8. Precision states Wagner's breaches caused precision's "Data" to be "disclosed to an unknown number of persons," FAC ¶136, but it pleads not a single instance of disclosure occurring *after* the December 2023 (or later) breach. *See, e.g.*, FAC ¶¶69-71 (alleging Mammoth's possession of the FEM in 2023).

### 2. Precision Does Not Allege Wagner Breached the Development Agreement by Disclosing the Data.

Precision's allegations that Wagner breached the Development Agreement by disclosing

WAGNER DEFENDANTS' MOTION TO DISMISS (FED. R. CIV. P. 12(B)(6))
Page 10 of 29

the Data in violation of the Agreement's confidentiality provisions also fail. As an initial matter, Precision does not provide notice of the boundaries of the parties' dispute. *See Space Data Corp. v. X*, No. 16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) ("These allegations do not satisfy the Rule 8 pleading requirements, as they do not even give the Court or Defendants notice of the boundaries of this case."). The FAC does not identify the full universe of information—from among the tens of thousands of pages of documents that Precision says comprise the Data covered by the Development Agreement—the Wagner Defendants allegedly disclosed. *See LyricFind, Inc. v. Musixmatch, S.p.A.*, 798 F. Supp. 3d 1040, 1081 (N.D. Cal. 2025) (dismissing breach of contract claim where plaintiff "does not allege what information was disclosed and the circumstances of the disclosure).

More fundamentally, the FAC does not adequately allege that ***Wagner Defendants*** disclosed the information. At most, the FAC offers conclusory assertions that Mammoth "obtained the FEM from Mr. Wagner and/or Wagner Aeronautical" and that "Mammoth induced Mr. Wagner and Wagner Aeronautical to breach their duties to maintain the secrecy of the FEM." FAC ¶ 71. Elsewhere, the complaint states "[o]n information and belief and as supported by the factual allegations herein, Mammoth, Mr. Wagner, and Wagner Aeronautical agreed and conspired with one another to unlawfully disclose and use Precision's Data." FAC ¶89. Those allegations are wholly conclusory. They do not "contain sufficient ***factual*** matter" describing when, how, or through what means Wagner supposedly disclosed the information to Mammoth. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Those allegations thus allow the Court to "infer more than the possibility of misconduct," *PIW TSG LLC,* 2026 WL 45053, at *2 (citing and quoting *Twombly*, 550 U.S. at 555); *see also* Mammoth Mot. 9-14 (describing failure

to identify boundary of Data at issue in case).

Other documents, Precision claims, appear on Mammoth's servers. *See* FAC ¶¶69 (FEM), 73 (valve reports), 78 (9G barrier document). But it nowhere alleges that ***Wagner*** disclosed those documents to Mammoth in violation of the Agreement's confidentiality provisions. *See* Mammoth Mot. 23-24; *cf. Kimera Labs Inc. v. Jayashankar*, No. 21-cv-2137, 2022 WL 11965058, at *9 (S.D. Cal. Oct. 20, 2022) (noting court "cannot presume the transfer of trade secret information occurs simply because Defendants possess it"). Having failed to allege the details of how Mammoth supposedly obtained these documents, Precision has not plead facts sufficient to allow the plausible inference that the ***Wagner Defendants*** (rather than someone else) provided the documents to Mammoth.

Further highlighting the deficiencies in the FAC, Precision pleads many allegations concerning Wagner's supposed disclosures "on information and belief." *See* FAC ¶¶ 68, 71, 89, 116, 117, 125. But, "[i]n the *post-Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim." *Talk Radio Network Enters. v. Cumulus Media Inc.,* 271 F. Supp. 3d 1195, 1207 (D. Or. 2017) (dismissing claims pleaded on information and belief pursuant to Fed. R. Civ. P. 12(b)(6)).

### 3. Precision's Assertions that Wagner Breached the Development Agreement by Disclosing "Know-How" Fail.

Finally, Precision asserts that alleges Wagner breached the Development Agreement by disclosing "Know-How." FAC ¶134. Precision recognizes, as it must, that Wagner received a license to ***Precision*** Know-How, *see* Dev. Agmt. § 1(e), but it suggests the license "automatically and irrevocably terminate[d]" because "discovery will likely show" Wagner "fail[ed] to 'maintain[ ]'" that Know-How as a trade secret. FAC ¶135. Rule 8, however, requires ***facts***

FG: 110154596.6

permitting a plausible inference of liability.  *See* pp. 10-11, *supra*.  Precision's wholly conclusory allegations concerning Wagner's supposed failure to maintain Precision Know-How as a trade secret offer no supporting facts whatsoever.

More fundamentally, however, Precision wholly ignores the Development Agreement's provisions concerning ***Wagner*** Know-How, which Wagner ***owns***. *See* Mammoth Mot. 4. Under the Agreement, Wagner Know-How includes all Know-How "***not*** unique" to the 757.  Dev. Agmt. § 1(a) (emphasis added).  Precision Know-How, by contrast, is limited to Know-How that ***is*** unique to the 757.  Dev. Agmt. § 1(a). Here, Precision alleges Wagner supposedly disclosed Know-How in connection with a conversion program for a Boeing 777. *See, e.g.,* FAC ¶ 77.  Any Know-How relevant to ***that*** conversion program is necessarily ***Wagner*** Know-How: information relevant to a 777 conversion ***cannot*** be "unique" to the 757. The allegations thus raise the "obvious alternative explanation" that, to the extent Wagner disclosed Know-How at all, he only disclosed Wagner Know-How. *Iqbal*, 556 U.S. at 682.

### B.    Plaintiffs' Claim for Conversion (Count IV) Fails.

In addition to their claims for Misappropriation of Trade Secrets (addressed below), Plaintiffs allege that the Wagner Defendants' disclosure of information to Mammoth amounted to the common law tort of conversion under Oregon law, because it "depriv[ed] Precision of its right to maintain secrecy over its Data and to receive compensation for Defendants' use of same." FAC ¶ 128; *see* FAC ¶¶ 122-128. However, Plaintiff's Conversion claim fails as a matter of law.

#### 1.    Plaintiffs' Conversion Claim Fails Because the FAC is Insufficiently Conclusory and Relies Primarily on Information and Belief.

Plaintiffs allege in their conversion claim that Precision owns Data, consisting of "a massive collection of documents detailing processes, methods, and qualification and testing data

pertaining to Precision's 757 Conversion Program," and that "on information and belief, [the Wagner Defendants] improperly retained all of Precisions' Data and thereafter provided it to Mammoth for use in Mammoth's 777 conversion program." FAC ¶¶ 124-125. Plaintiffs' conversion claim fails as a matter of law because it does not meet the pleading standards required by *Twombly* and *Iqbal.*

Specifically, the FAC's description of the "massive collection of documents" allegedly improperly retained by the Wagner Defendants fails to provide sufficient factual detail to identify the nature of the documents Plaintiffs are referring to. "Process" and "method" documents referred to in ¶ 124, for example, are squarely within the contractual definition of "Wagner Know-How" or "Precision Know-How," and therefore, were properly retained by the Wagner Defendants. Dev. Agmt. § 1(a). Further, there are not sufficient facts alleged to support a reasonable inference that the Wagner Defendants' alleged conduct in retaining and disclosing certain material related to the 757 conversion was wrong, based on conclusory statements – without more – that the Wagner Defendants "retained" and "provided" "Data" to Mammoth. To simply allege a the conclusory statements that the Wagner Defendants "improperly retained" and "provided" unknown documents – much of it sounding like documents that Mr. Wagner had the right to retain and disclose – is not sufficient and does not lead to a reasonable inference of wrongdoing. *PIW TSG LLC,* 2026 WL 45053, at *2 (citing and quoting *Twombly*, 550 U.S. at 555). An equally reasonable inference would be that the Wagner Defendants properly disclosed "Know-How" documents to Mammoth in compliance with the ownership, license, and sublicense rights assigned in the Development Agreement, or did not disclose any information at all.

Similarly, Plaintiffs' claims regarding the Wagner Defendants' disclosure of documents to Mammoth are pleaded solely on information and belief. FAC ¶ 125. Without additional facts pleaded based on personal knowledge about disclosure to Mammoth and how such disclosure "deprived Precision of its exclusive use and exploitation," the conversion claim fails.

> **2.      Plaintiffs Fail to Adequately Allege the Elements of a Conversion Claim.**

The tort of conversion requires the Plaintiff to allege (1) "an intentional exercise of dominion or control" (2) "over a chattel" that (3) "so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *In re Martin,* 970 P.2d 638, 642 (Or. 1998); *see Talk Radio Network Enters.,* 271 F. Supp. 3d at 1210 (quoting and citing *Mustola v. Toddy*, 253 Or. 658, 663, 456 P.2d 1004 (1969)). Precision's conversion claim should be dismissed because the FAC fails to identify the specific "chattel" or "chattels" that the Wagner Defendants converted, nor does it allege that the Wagner Defendants "seriously interfere[d]" with Precision's right of control of its Data or other "Precision Proprietary Data."

First, Plaintiffs fail to identify what information – which "chattels" – were converted by the Wagner Defendants. *See In re Pickett,* No. 19-ap-3004-TMB, 2019 WL 3943666, at *2 (Bankr. D. Or. Aug. 20, 2019) (citing *Becker v. Pac. Forest Indus., Inc.*, 211 P.3d 284, 287 (Or. Ct. App. 2009)); *see also NextWave Marine Sys., Inc. v. M/V Nelida*, 488 F. Supp. 3d 1004, 1016 (D. Or. 2020) (granting summary judgment where the plaintiff failed to identify evidence that any specific tools were missing). The FAC refers generally to "**tens of thousands of pages** of documents," "testing data generated" to qualify "thousands of specific aircraft parts" for FAA approval, "computer models," "**and more**." FAC ¶¶ 35-36 (emphasis added). These broad categories of

FG: 110154596.6

**information** (rather than documents) do not "tether" the claim "to understood, identifiable property." *Thomas v. Thomas*, No. 1:14-cv-131, 2015 WL 1467207, at *6 (D. Idaho Mar. 30, 2015); *see Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024) (dismissing conversion claim that generally referred to "Confidential Information, trade secrets, . . . and other proprietary information"); *Fiber Sys. Int'l, Inc. v. Gonzalez*, No. 4:04-cv-348, 2005 WL 8167081, at *2 (E.D. Tex. Feb. 9, 2005) (same with respect to conversion of "engineering and product designs, and other files containing confidential, proprietary and/or privileged information and trade secrets"); *Profade Apparel, LLC v. Road Runner Sports, Inc.*, No. 18-cv-1254, 2020 WL 5230490, at *6 (S.D. Cal. Sept. 2, 2020) (same where plaintiff failed to "identify the alleged 'proprietary information' converted").

Second, Precision fails to allege "an intentional exercise of dominion or control" that "so seriously interferes" with its rights that the Wagner Defendants "may justly be required to pay [Precision] the full value of the chattel." *Martin*, 970 P.2d at 642. "Serious" interference arises only when the defendant deprives the *plaintiff* of its ability to use the intellectual property; mere use or possession by the defendant is insufficient. *See Seal Source, Inc. v. Calderon*, No. 3:09-cv-875-HU, 2011 WL 5041275, at *11-12 (D. Or. Sept. 29, 2011), *report and recommendation adopted*, No. 3:09-cv-875-HU, 2011 WL 5057079 (D. Or. Oct. 24, 2011) (granting summary judgment on conversion claim to defendant who allegedly copied confidential information).

Precision nowhere alleges that the Wagner Defendants' supposed retention or sharing of Data interefered with Precision's own ability to use the underlying information or data for its own purpose. *See* FAC ¶¶ 71-84, 125-128. Therefore, the elements of conversion have not been property stated.

FG: 110154596.6

### 3.     Plaintiffs' Claim for Conversion is Preempted by the Oregon Uniform Trade Secrets Act.

Because Plaintiffs are seeking remedies for misappropriation of trade secrets against the Wagner Defendants, their common law claims seeking similar relief are preempted. The OUTSA preempts "conflicting tort, restitution or other law[s] of Oregon providing civil remedies for misappropriation of a trade secret." ORS 646.473(1). A claim is preempted where it is "based on the same operative facts" as a trade secret claim or its "essence . . . relates primarily to the alleged misappropriation of a trade secret." *AcryMed, Inc. v. ConvaTec*, 317 F. Supp. 2d 1204, 1217 (D. Or. 2004); *see, e.g.*, *PIW TSG, LLC*, 2026 WL 45053, at *10 (holding common-law claim preempted).

Preemption applies "'regardless of whether [the] information'" at issue "'meets the statutory definition of a trade secret.'" *Opal Labs Inc., v. Sprinklr, Inc.*, No. 3:18-cv-1192-HZ, 2021 WL 3713042, at *6 (D. Or. Aug. 19, 2021); *accord Pigg*, 2025 WL 593574, at *7. Determining whether a claim is preempted requires "'examin[ing] the facts alleged in support of each claim to determine the extent to which the claim is based upon the misappropriation of trade secrets or other information.'" *Pigg*, 2025 WL 593574, at *7.

Precisions' Conversion claim is preempted. Precision alleges that the Wagner Defendants provided Data to Mammoth for use in Mammoth's 777 P2F conversion program, and misappropriated trade secret information beyond the Data. *See, e.g.* FAC ¶ 134-135. These allegations simply restate Plaintiffs' trade-secret claims. *See id.* ¶¶ 99-101 (alleging that the Wagner Defendants improperly retained Precision's Data and improperly disclosed that Data to Mammoth, and that all Defendants have improperly used Precisions' Data). The conversion claim is thus preempted. *See, e.g.*, *Select Timber Prods. LLC v. Resch*, No. 3:17-cv-541-HZ, 2017 WL

FG: 110154596.6

3709066, at *5 (D. Or. Aug. 27, 2017) (conversion claim preempted where it rested on theory that "'Defendants each exercised control over Plaintiffs' Confidential Process and Trade Secret Information'"); *Kante v. Nike, Inc.*, No. 07-cv-1407-HU, 2008 WL 5246090, at *4 (D. Or. Dec. 16, 2008) (similar), *aff'd*, 364 F. App'x 388 (9th Cir. 2010).

### C.    Plaintiffs Fail to Plausibly Plead Trade Secret Misappropriation Under Oregon and Federal Law (Count I & II)

#### 1.    By the express terms of the Development Agreement, this is not a trade secrets case.

Precision's trade secret claims rest on its allegations that substantial portions of its Data constitute trade secrets. *See* Dkt. 32, ¶¶ 35, 39, 40, 95. But the FAC does not plausibly allege that any specific materials identified therein qualify as trade secrets. The only concrete examples it identifies—the FEM and three specific documents—are alleged to be "Data." Dev. Agmt. § 1(a); Dkt. 32, ¶¶ 70, 75, 78. Precision's admission that these materials are Data is fatal to its trade secrets claims.

The Development Agreement confirms why. It draws a clear distinction between "Know-How" and "Data." As explained above, "Know How" includes "all patents, patent applications, copyrights, *trade secrets* or other proprietary rights." Dev. Agmt. § 1(a) (emphasis added). Data, meanwhile, is expressly distinguished from "Know-How" and particularly excluded from the definition of "Know-How." *Id.* Thus, by clear contractual terms, Data cannot constitute trade secrets. That distinction is critical here because the Development Agreement also governs ownership and use rights. Under the terms of the Agreement, Mr. Wagner owns "Know-How" that is not unique to the Precision 757 conversion program and is granted a license to use "Know-How" unique to the Precision 757 conversion program. Dev. Agmt. §§ 1(e)–(f). Against that backdrop,

FG: 110154596.6

Precision's attempt to recast "Data" as trade secrets collapses, given that the materials it identifies fall within the category of Data, not Know-How, and therefore cannot form the basis of a trade secret claim.

### 2.     The FAC Fails to Adequately Allege the Existence of Protectable Trade Secrets

To state a claim for trade secret misappropriation, a plaintiff must allege at least the existence of a protectable trade secret and the defendant's misappropriation of the trade secret. *Shita v. Taylor*, No. 3:25-CV-00051-AN, 2025 WL 507306, at *2 (D. Or. Feb. 14, 2025) (under the Defend Trade Secrets Act ("DTSA"), a plaintiff must allege that (1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff); *ESHA Rsch., LLC v. RLH Assets, LLC*, No. 3:25-CV-00880-AB, 2025 WL 2697107, at *5 (D. Or. Sept. 22, 2025) (to establish a claim under the Oregon Uniform Trade Secrets Act ("OUTSA"), a plaintiff must allege that (1) the subject of the claim qualifies as a trade secret, (2) the plaintiff employed reasonable measures to maintain the secrecy of its trade secrets, and (3) the conduct of the defendant constitutes statutory misappropriation). Conclusory allegations that trade secrets exist are not enough. *Iqbal*, 556 U.S. at 681. Instead, the plaintiff "must identify a trade secret with sufficient particularity" to accomplish two aims: (1) to show that something beyond general knowledge is being claimed and (2) to put the defendant on notice regarding the nature of the trade secret." *Shita*, 2025 WL 507306, at *3 (citing *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1144 (N.D. Cal. 2019); *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 909 (N.D. Cal. 2023)). Precision's claim fails to adequately identify what Precision considers to be its trade secrets.

Precision's complaint paints the existence of Precision trade secrets with a brush the size of the wall; it alleges that a "compilation" of Data that comprises "tens of thousands of pages" constitutes a trade secret. Dkt. 32, ¶ 35. It then purports to shrink the brush, alleging that "individual pieces of information within the compilation of Data are also trade secrets." Dkt. 32, ¶ 39. Finally, narrowing further, it references some unidentified "individual qualification documents" (Dkt. 32 ¶ 40), a 44-page report, a 92-page report, and a 408-page document (Dkt. 32, ¶¶ 73–75, 78 (characterizing these documents as part of Precision's allegedly trade secret "Data")), and an entire computer model (Dkt. 32 ¶¶ 39, 98). But none of these descriptions provide adequate specificity to survive a motion to dismiss.

Crucially, not all sensitive or proprietary information qualifies as a trade secret. Even setting aside that Precision and Wagner contractually defined the Data at issue (including the computer model) as separate and distinct from either party's "trade secrets," courts recognize a legal distinction between information that "potentially qualifies for trade secret protection" and tangible, claimed trade secret material. *ESHA Rsch., LLC v. RLH Assets, LLC*, No. 3:25-CV-00880-AB, 2025 WL 2697107, at *5 (D. Or. Sept. 22, 2025) (quoting *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020)). Viable trade secret claims arise only out of the latter. A plaintiff cannot simply wave its hand at a broad category of information or "cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information." *InteliClear, LLC*, 978 F.3d at 658 (quoting *X6D Ltd. v. Li-Tek Corps. Co.*, 2012 WL 12952726, at *6)); *IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F. Supp. 2d 812, 819 (W.D. Wis. 2001) ("Long lists of general areas of information containing unidentified trade secrets are not substitutes for particularized and concrete trade secrets."). Instead, a plaintiff must indicate

*what within* a referenced category or set of documents is trade secret. *InteliClear, LLC*, 978 F.3d at 658; *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1167 (9th Cir. 1998).

Precisely identifying what the plaintiff considers to be a trade secret is particularly important in a case like this one where the plaintiff itself admits the existence of specialized knowledge (including trade secrets) that belong to the *defendants*, Mr. Wagner and Wagner Aeronautical. Dev. Agmt. § 1(a). The Ninth Circuit has repeatedly recognized that a claimed trade secret must be defined with "*sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1087 (9th Cir. 2025) (quoting *InteliClear*, 978 F.3d at 658) (italics in original, underlining added); *Commercial Fire Prot., LLC v. Pigg*, No. 3:24-CV-00922-AN, 2025 WL 593574, at *3 (D. Or. Feb. 21, 2025) (plaintiff must provide sufficient particularity that defendants can determine "whether the information in question was in fact secret and whether it was in fact not readily ascertainable through appropriate means"). Here, Plaintiff and Defendants all operate within a highly specialized trade, and Wagner has long been a key player in the industry. Precision holds exclusive rights only to Data. Dev. Agmt. § 1(a). Precision's own allegations confirm that at least some of the "Data" is not trade secret at all. The FAC defines "Data" broadly to include a wide range of materials generated during the 757 conversion program, including engineering documents, testing data, and related materials. FAC, ¶¶ 35–36, 39–40. But Precision expressly acknowledges that only "many" of the documents within that universe qualify as trade secrets. FAC, ¶ 40 ("*Many* of the individual qualification documents within the Data are also trade secrets." (emphasis added). Precision must, therefore, distinguish between the specific information it views as its own trade secrets and that information which is

not—such as information generally known in the trade (for instance, information required by the FAA), specially known to those skilled in the trade (for instance, particular methods of modeling), and information specially known to Wagner (i.e., what Precision views as "Wagner Know-How").

Only by providing such specificity will Precision fairly and adequately put Wagner on notice of what he is actually defending against. *Imax*, 152 F.3d at 1167. Such information is necessary both for Wagner to be able to frame his defenses and for him (and the Court) to determine the scope of appropriate discovery. *Shita*, 2025 WL 507306, at *3. Since Precision has, to date, provided nothing more than hand-waving at compilations and hundred-page documents and general models, Precision has not met its duty under FRCP 8 to establish the existence of trade secrets giving rise to any trade secret misappropriate claims.

### 3.     The FAC Does Not Plead Facts That Plausibly Allege Misappropriation by the Wagner Defendants

Even assuming, for purposes of this motion, that Precision has established the existence of protectable trade secrets, its claims still fail because the FAC does not plausibly allege that Mr. Wagner or Wagner Aeronautical *misappropriated* any such trade secrets.

Both DTSA and OUTSA define "misappropriation" as either (1) the acquisition of a trade secret "by a person who knows or has reason to know that the trade secret was acquired by improper means," or (2) the "disclosure or use of a trade secret of another without express or implied consent[.]" 18 U.S.C. § 1839(5)(A)–(B); ORS 646.461(2). Consistent with those statutory definitions, district courts in this Circuit explain that misappropriation occurs when "[a] person … acquire[s], use[s], or disclose[s] a trade secret with knowledge or reason to know that the trade secret was obtained through improper means." *See*, *e.g.*, *AssuredPartners of Or., LLC v. Reese*,

Case No. 6:22-cv-00673-MC, 2022 WL 18024957, at *2 (D. Or. Dec. 30, 2022); *Pigg*, 2025 WL 593574, at *5.

Importantly, where a complaint asserts trade secret misappropriation claims against multiple defendants, a plaintiff must plausibly allege misappropriation as to each defendant individually. It is not sufficient to rely on the overlap between the information allegedly misappropriated by all defendants or to rely on collective allegations that lump multiple defendants together. *Reese*, 2022 WL 18024957, at *3 (dismissing claims against two defendants where the complaint relied on the overlap between the information allegedly misappropriated by these two defendants and others, rather than facts showing each defendant's own misappropriation); *Navigation Holdings, LLC v. Molavi*, 445 F.Supp.3d 69, 80 (N.D. Cal. 2020) (granting dismissal of trade secrets misappropriation claims against individual defendants because the complaint lumps together individual defendants along with their employer but fails to adequately allege the acts of each defendant). Rather, the complaint must allege that each defendant *actually* improperly acquired, used, or disclosed trade secrets. *Pigg*, 2025 WL 593574, at *5. In other words, a complaint must "specifically connect allegations of misappropriation to specific [d]efendants' actions." *Id.*

The FAC, however, does not plausibly allege facts showing that Mr. Wagner or Wagner Aeronautical improperly acquired, disclosed, or used any trade secret. Instead, the FAC conclusively asserts that Mr. Wagner and Wagner Aeronautical must have misappropriated trade secrets because *Mammoth* allegedly possesses certain engineering information associated with Precision's conversion program. The FAC does not allege that Mr. Wagner or Wagner Aeronautical improperly obtained alleged trade secrets, whether during or after their business

relationship with Precision ended, nor how they purportedly transmitted Precision's trade secrets to Mammoth, or how they used such trade secrets in Mammoth's aircraft conversion program. These missing factual allegations are critical because the DTSA and OUTSA require plausible allegations as to *each defendant*. Absent such allegations, the FAC merely asks the Court to equate Mammoth's possession of alleged trade secrets with Mr. Wagner's and Wagner Aeronautical's misappropriation of trade secrets, which must not be allowed.

        **a.**        **The FAC Fails to Allege Misappropriation Because "Improper Retention" is not a Cognizable Theory under the DTSA or OUTSA**

The DTSA and OUTSA define "misappropriation" to include only (1) the acquisition of a trade secret by improper means, or (2) the disclosure or use of a trade secret without consent. 18 U.S.C. § 1839(5)(A)–(B); O.R.S. § 646.461(2). The statutes do not recognize "retention" of information, standing alone, as a basis for misappropriation. *Id.*

Even assuming the improper acquisition theory were at issue (which Precision does not appear to allege), a plaintiff must plead facts showing that the defendant acquired trade secrets through "improper means," including "theft, bribery, misrepresentations, breach, or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); ORS § 646.461(1). Claims that survive a motion to dismiss therefore typically include factual allegations describing *how* the defendant obtained trade secrets through such improper means. *See*, *e.g.*, *7EDU Impact Academy Inc. v. You*, 760 F.Supp.3d 981, 997–98 (N.D. Cal. 2024); *Giostar Therapy, LLC v. Bioscience Americas LLC*, No. CV-18-02788-PHX-SRB, 2019 WL 7841723, at *3 (D. Ariz. Apr. 22, 2019).

FG: 110154596.6

The FAC contains no such allegations. It does not allege, for example, that Mr. Wagner or Wagner Aeronautical downloaded files from password-protected systems shortly before leaving Precision, or secretly copied proprietary files, or accessed restricted databases without authorization, or transferred confidential files to personal devices or accounts, or engaged in any other suspicious activity suggesting the improper acquisition of trade secrets. *7EDU Impact Academy Inc.*, 760 F.Supp.3d at 997–98 (discussing different types of factual details typically required to plausibly allege improper acquisition). In fact, the FAC contains no factual allegations whatsoever describing how Mr. Wagner or Wagner Aeronautical allegedly obtained any of the tens of thousands of documents of design and testing data related to the Precision 757 aircraft Conversion Program.

Instead, Precision's theory is that Mr. Wagner allegedly "retained" Precision Data and failed to return it upon request in 2023. FAC ¶ 81. But retention is not acquisition. The FAC does not allege that Mr. Wagner obtained any information from Precision through theft, misrepresentation, unauthorized access, or any other improper means within the meaning of the statute. *See* 18 U.S.C. § 1839(6)(A). To the contrary, the FAC is silent as to when or how Mr. Wagner came into possession of the alleged "room full of the Precision 757 data," and does not allege that Precision believed Mr. Wagner *lacked* such materials *prior to* its request in 2023.

At most, the FAC alleges that Mr. Wagner *possessed* alleged trade secrets and failed to return them to Precision upon request, which suggests a potential dispute over contractual obligations governing the possession and/or return of information. *Id.* But even if possession of Precision's alleged trade secrets was inconsistent with the contractual terms of the parties'

FG: 110154596.6

agreement, such allegations would amount to a breach of contract, not acquisition of trade secrets through improper means.

Accordingly, the FAC's allegations of "retention" cannot substitute for the statutory requirement of improper acquisition, and Precision's misappropriation by "improper retention" claim fails as a matter of law.

### b.     Precision Fails to Plausibly Allege Improper Disclosure or Use

In terms of pleading misappropriation under an improper use theory, although the concept of "use" is broad, encompassing not only incorporation of confidential information into a competing product but also the use of such information to obtain a strategic advantage, a plaintiff must nevertheless plead facts showing that the defendant *actually* used the trade secret without authorization. *See Alt. Legal Sols., Inc. v. Ferman Mgmt. Servs., Corp.*, No. CV-07-880-ST, 2009 WL 10733692, at *12 (D. Or. May 5, 2009); *Opal Labs Inc. v. Sprinklr, Inc.*, No. 3:18-cv-01192-HZ, 2021 WL 3713042, at *4 (D. Or. Aug. 19, 2021). Conclusory assertions that a defendant "used" trade secrets, without supporting factual allegations, are insufficient to state a claim. *Perimeter Sols. L.P. v. Fortress N. Am., L.L.C.*, No. 2:24-cv-1276, 2025 WL 553288, at *6 (E.D. Cal. Feb. 19, 2025) (noting that to adequately allege what was misappropriated, plaintiff's specific factual allegations would need to work in concert to provide insight into which trade secrets were used and how defendant used the trade secrets) (citing *Applied Biological Lab'ys, Inc. v. Diomics Corp.*, No. 3:20-cv-02500-AJB-LL, 2021 WL 4060531, at *5 (S.D. Cal. Sept. 7, 2021)).

Two cases from this Circuit are illustrative. In *Space Data Corp.,* 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017), the court explained that since Space Data alleged that Google received trade secrets pursuant to the NDA, Space Data must plead *facts* showing that Google had a duty

FG: 110154596.6

not to *use the information in the way alleged*. It was inadequate for Space Data to conclusively assert that "Defendants have engaged in other business activity based on Space Data's confidential trade secret information, which conflict with their legal obligations to Space Data" without more facts providing a reasonable basis for the court to infer that Google improperly used Space Data's trade secrets. *Id.* While the court acknowledged that a plaintiff need not plead precisely how the trade secrets were used, it must allege enough facts to "raise a right to relief above the speculative level." *Id.* (citing *Twombly*, 550 U.S. at 555). Similarly, in *Pigg*, the district court noted that CFP's allegation that "[d]efendants misappropriated [CFP's] Trade Secrets by using [CFP's] Trade Secrets for his [*sic*] own commercial benefit" was conclusory, as was the statement that "[a]t the time of use, [CFP's] Trade Secrets were improperly derived from Pigg's relationship with [CFP] under which Pigg owed [CFP] a duty of loyalty," because these allegations failed to specifically connect allegations of misappropriation to specific defendants' actions and were insufficient to establish that each defendant "actually used" trade secrets. 2025 WL 593574, at *5.

The FAC here suffers from the same defects identified in *Space Data* and *Pigg*. The FAC only asserts, repeatedly, but in conclusory fashion, allegations such as "the Precision Data [was] unlawfully retained, used, and disclosed to Mammoth by Mr. Wagner and Wagner Aeronautical" (FAC ¶68) or "Mr. Wagner and Wagner Aeronautical have been unlawfully using Precision's Data to further Mammoth's own 777 conversion program" (FAC ¶82), without identifying any specific act of use actually attributable to Mr. Wagner or Wagner Aeronautical. These allegations merely recite the legal conclusion of misappropriation by improper use, but they do not provide any factual basis of Mr. Wagner's or Wagner Aeronautical's conduct from which the Court could reasonably infer *actual use* of Precision data by these two defendants beyond speculation.

FG: 110154596.6

Nor does the FAC identify which, if any, trade secrets Mr. Wagner or Wagner Aeronautical allegedly used, or in what context such information was used by these two defendants. The FAC does not allege, for example, that Mr. Wagner personally incorporated Precision design files, engineering models and/or testing data into Mammoth's work, or relied on any category of dataset in performing engineering analyses, or conducted internal experimentation with Precision's data to assist with Mammoth's conversion program, or employed Precision's proprietary information in Mammoth's research and development process. *See Opal Labs Inc.* 2021 WL 3713042, at *4 (acknowledging that use of trade secrets could encompass different activities, including direct incorporation, internal experimentation, application of confidential information in manufacturing, production, research, development, and so on) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F.Supp.2d 1064, 1072 (N.D. Cal. 2005)). Precision makes sweeping reference to tens of thousands of documents and extensive design and technical data, yet fails to connect *any* of that information to any concrete act of use by Mr. Wagner or Wagner Aeronautical.

Similar pleading defects apply to the improper disclosure theory as well. The FAC only conclusively alleges that "Mammoth obtained the FEM from Mr. Wagner and/or Wagner Aeronautical" (FAC ¶71) and that "it appears that Mr. Wagner and Wagner Aeronautical unlawfully disclosed the Precision Data to Mammoth in violation of the Development Agreement" (FAC ¶82), but these allegations do not describe how Mr. Wagner or Wagner Aeronautical transmitted the FEM, the design files or the technical data to Mammoth, when it was transmitted, to whom or under what circumstances. Alleging that Mammoth "obtained" information, or that it "appears" disclosure occurred, is not a substitute for pleading facts showing that disclosure by Mr. Wagner or Wagner Aeronautical actually took place—especially considering that the FAC also

FG: 110154596.6

recognizes that Precision and Mammoth have shared numerous employees and engineers besides Mr. Wagner.

Nor does the FAC's allegation that Mr. Wagner possessed "a room full of Precision data" cure any deficiency (FAC, ¶81). Even accepting that allegation as true, possession does not plausibly imply improper acquisition, use, *or* disclosure. *See Kimera Labs Inc. v. Jayashankar*, No. 21-cv-2137, 2022 WL 11965058, at *9 (S.D. Cal. Oct. 20, 2022) (citing *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1027 (E.D. Cal. 2011)). Furthermore, the FAC does not even allege what Precision materials were allegedly found in this "room," whether those materials included trade secrets (particularly given that Precision itself acknowledges that not all "Precision Data" qualifies as such, *see* FAC ¶ 40), or whether any such materials were ever transmitted, physically or electronically, to Mammoth.

In short, the FAC improperly fails to allege any disclosure or usage conduct specific to Mr. Wagner or Wagner Aeronautical. Precision's allegations are insufficient to state a trade secrets misappropriation claim against the Wagner Defendants.

## CONCLUSION

For the foregoing reasons, defendants William J. Wagner and Wagner Aeronautical, Inc. respectfully request that Plaintiffs' First Amended Complaint be dismissed with prejudice.

DATED this 20th day of March, 2026.

FOSTER GARVEY PC

By  *s/ Eryn Karpinski Hoerster*
Eryn Karpinski Hoerster, OSB #106126
E-Mail: eryn.hoerster@foster.com
Telephone:  (503) 228-3939
Fax:  (503) 226-0259

*Of Attorneys for Defendants William J. Wagner and Wagner Aeronautical, Inc.*

FG: 110154596.6